107 N.J. Super. 375 (1969)
258 A.2d 391
STATE OF NEW JERSEY, PLAINTIFF,
v.
ANTHONY FALCETANO, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 10, 1969.
*377 Paul Murphy, argued the case for plaintiff (Mr. Joseph P. Lordi, Essex County Prosecutor).
Martin Greenberg, argued the case for defendant.
*378 FUSCO, J.S.C.
Defendant, who is charged with homicide and assault with intent to kill under two separate indictments, moves for an order directing a psychiatric examination of Ralph Tino, a witness to the alleged murder of Michael Tino, his father, to determine his competency as a witness both at the time of the alleged murder and now for purposes of trial.
In State v. Butler, 27 N.J. 560 (1958), the trial court allowed the State to hold a pretrial psychiatric examination of a witness who had been indicted along with defendant but who had turned State's evidence and who had been confined previously to an out-of-state mental hospital. In addition to allowing the State to examine the witness, it denied defendant's motion to order a psychiatric examination of the witness. In making its determination of competency, the trial court based its decision, at least in part, on the State's reports which it examined privately and ex parte. At 598-599.
The Supreme Court reversed the trial court on this motion by defendant, holding that, although there is no express practice rule authorizing a pretrial order for a psychiatric examination, a trial court, having jurisdiction of a criminal prosecution, has the authority to so order the examination by subpoena in its inherent powers. At 600-601. The ex parte decision of competency and the resulting lack of cross-examination deprived defendant of a basic fair trial right. At 605. Cf., Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 1965). The court was cognizant of Matter of Peterson, 253 U.S. 300, 312, 40 S.Ct. 543, 547, 64 L.Ed. 919 (1920), which holds:
Courts have (at laest in the absence of legislation to the contrary) inherent power to provide themselves with appropriate instruments required for the performance of their duties.
The court warned, though, in Butler, supra, that the practice of granting psychiatric examinations of witnesses *379 must be engaged in with "great care" and only upon a "substantial showing of need and justification." 27 N.J., at 605.
A pretrial order was granted to defendants, appointing a psychiatrist to examine a witness in another murder trial, but when the witness refused to submit to the examination, the trial court denied defendant's motion for an order compelling her submission. The Supreme Court remanded the case, holding that such an examination should have been ordered. State v. Franklin, 49 N.J. 286, 288 (1967). Here again, the witness had previously been committed to the state hospital for the insane. After the witness was examined by a psychiatrist, the trial judge determined that she was competent to testify and the trial continued. See State v. Franklin, 52 N.J. 386 (1968).
A slightly different question is presented in State v. Tate, 47 N.J. 352 (1966). In that case, the defendant asked for orders permitting pretrial depositions in a murder trial. This request was denied on the grounds that such pretrial disclosure should only be allowed where it was anticipated that the witness could not attend a criminal proseeding. Id. at 353-354, State v. Farmer, 48 N.J. 145 (1966). Also, see, R. 3:13-2(a) (formerly, R.R. 3:5-8(a). This situation is not present in the instant case  the scope of the examination sought is not similar to the scope of testimonial depositions.
In the instant case, there is no evidence that the witness involved has ever been hospitalized in a mental institution, nor is there any evidence that there was ever any question of his competence before the alleged murder and assault took place. There is, though, the report of a police record made on September 20 when three officers investigated a complaint emanating from the Tino home. That report is instructive in this case.
According to the report, Ralph Tino had threatened his mother and sister and had thrown ash trays, dishes and food about the kitchen, previous to the arrival of the officers. When the police arrived, Tino continued "screaming and *380 swearing" at his mother, began choking her and shouted obscenities at her. After one of the officers pulled him away, he attacked his mother again "more violent[ly]."
The mother indicated to the officers that the condition of the house was caused by her son, who is the subject of this application, and that incidents of this nature had been happening since her husband's death. She added that she had been trying unsuccessfully to have her son visit a doctor.
In an affidavit, Tino stated that he does not consent to a psychiatric examination. The State also alleges that the police report does not give rise to the right of the court to exercise its inherent authority to give the psychiatric examination.
Of course, the rights of the witness must be considered in this action, as well as the rights of the defendant. In Butler, supra, where the court disallowed a procedure whereby the defendant could speak to the witness only in the presence of a representative of the prosecutor's office and the witness's counsel, it noted, "Such action, except as to the presence of [the witness's] counsel, we deem to be an undue limitation." Butler, supra, at 600.
Here, Tino has sworn that he does not have the funds available to obtain an attorney and has requested the court to appoint one. If a psychiatric examination is ordered, certainly the witness should have the benefit of legal counsel so that he is not faced with the danger of losing rights at what must be described as a "critical stage in the criminal process." Cf., State v. Williams, 97 N.J. Super. 573, 600-01 (Law Div. 1967).
The State has a broad policy of representation of indigent defendants in criminal proceedings. Included in the declaration of policy of the establishment of the state Public Defender system is the aim "that no innocent man [should] be convicted." N.J.S.A. 2A:158A-1. Under the new Rules of Court, the right to counsel has been expanded to certain non-indictable offenses. R. 3:27-2. The Public Defender *381 statute has been interpreted to include custodial interrogation and pre-indictment identifications "within the broad declaration of [statutory] policy. State in Interest of Anthony Antini, Jr., 53 N.J. 488, 492 (1969).
Considering the possibility that rights can be lost at a psychiatric examination if incompetency is found, regardless of the fact that the examinee is not the defendant in the action, the court must require court-appointed counsel to represent the witness at such an examination, if it is to decide that such an examination should be ordered.
Has there been the requisite showing of "need and justification" in this case? The actions of Ralph Tino are certainly those which indicate some kind of traumatic shock. The violence he exhibited, the attacks on his mother in the presence of police officers and the repetition of that violence (in stronger measures) after he was originally pulled away by the officers, indicate that there is more than a scintilla of evidence that such an examination should be ordered.
This is not an ordinary case, and this decision should not be used as a lever to open the doors to massive examination of witnesses in all kinds of actions. This is a capital case, and it is one in which the witness is the son of the deceased. Under the circumstances, it appears that it is a situation in which the court can use its "inherent power" to provide itself with "appropriate instruments required for the performance of [its] duties." Matter of Peterson, supra.
The court will order a psychiatrist, appointed by the court, to examine the witness. The witness will have counsel to insure against a situation in which witness might be deprived of critical rights. The court will then hear the psychiatric testimony in open court to determine the competency of the witness to testify, as well as such other evidence as may be presented by the parties, a function well within the province of the court. Franklin, supra, 52 N.J., at 399.
*382 In a case such as this, it is vitally imperative that adequate notice be given to the witness who is the potential subject of the court-ordered psychiatric examination. The need for such notice is apparent. This will be a critical stage of the proceedings for the witness, as discussed above, and the court would be derelict if it did not make notice obligatory on the party who is requesting the examination.
Under the Fifth and Fourteenth Amendments of the Constitution of the United States, no person should be deprived of "life, liberty, or property without due process of law." Clearly, the possibility of deprivation of competency is a due process right as contemplated by the Constitution. Under these circumstances, the need for adequate notice becomes all the more vital. Cf., Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1949).
As Butler, supra, noted, "great care" must be employed before a psychiatric examination of a witness will be ordered. Notice is one of the necessary safeguards that comports with "great care." The court now rules that in the future notice must be given to the witness to be examined contemporaneously with the request to the court for the psychiatric examination. Service of notice should be as in R. 4:4-4 of the new rules.
Under this rule,
Service * * * shall be made as follows:
(a) Individuals Generally. Upon an individual other than an infant under 14 years of age or an incompetent person, by delivering a copy of the summons and complaint to him personally, or by leaving a copy thereof at his dwelling house or usual place of abode with a competent member of his family of the age of 14 years or over then residing therein; or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on his behalf.

* * * * * * * *
(b) (2) Incompetents. Upon an incompetent person, by delivering a copy of the summons and complaint personally to the guardian of his person or a competent adult member of his family with whom he resides, or, if he is living in an institution then the director or chief *383 executive officer of the institution, or if service cannot be made upon any of them, then as provided for by court order; and, unless the court otherwise orders, also to the incompetent. R. 4:4-4.
The court orders that counsel be appointed to represent the witness Ralph Tino and that a psychiatrist will be selected by the court to conduct the requested psychiatric examination of him. The psychiatrist to be chosen will be selected from the panel of impartial medical experts as maintained by the Administrative Director of the Courts, under R. 4:20-2. The examination will be carried out in the manner contemplated generally by R. 4:20. However, costs of both the psychiatrist and the attorney to be appointed for the witness will be assessed to the defendant.